Rehabilitation and Community : 
Providers Association, and : 
Westmoreland County Blind : 
Association, and Associated : 
Production Services, Inc., and United : 
Cerebral Palsy of Central Pennsylvania, : 
Inc. and Scott Howard Schwartz by and : 
through Theodore A. Schwartz, Co : 
Guardian, and Ryan Brett by and : 
through His Guardian Francis Brett, : 
                  Petitioners : 
                   : 
          v. :   No. 543 M.D. 2019
                   :   SUBMITTED: October 9, 2020
Department of Human Services : 
Office of Developmental Programs, : 
                  Respondents : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge[1]
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                        FILED: February 3, 2021

      Before this Court are Preliminary Objections filed by the Department of Human Services Office of Developmental Programs (DHS) to the First Amended Petition for Review in the Nature of a Complaint/Equity Action for Declaratory and Injunctive Relief (Petition for Review) filed by Rehabilitation and Community Providers Association, Westmoreland County Blind Association, Associated Production Services, Inc., United Cerebral Palsy of Central Pennsylvania, Inc., Scott Howard Schwartz by and through his co-guardian, Theodore A. Schwartz, and Ryan Brett by

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Leavitt completed her term as President Judge.

and through his guardian, Francis Brett (together, Petitioners), in this Court's original jurisdiction. Also before this Court are Petitioners' Preliminary Objections to DHS's Preliminary Objections in the Form of a Motion to Strike DHS's Preliminary Objections under Pa. R.C.P. No. 1028(a)(2) and (3).

Petitioners, with the exception of Mr. Schwartz and Mr. Brett, are providers of community participation support (CPS) services to individuals with intellectual disabilities that receive reimbursement from DHS for their services. Mr. Schwartz and Mr. Brett are intellectually disabled individuals who receive CPS services from one of the provider Petitioners. Petitioners allege that in May 2019, DHS improperly implemented a new rate reimbursement system under which the provider Petitioners will no longer receive the necessary funding to keep their CPS programs operational. Petitioners seek both declaratory and injunctive relief to invalidate DHS's new payment methodology.

For the reasons that follow, we sustain DHS's Preliminary Objection challenging Petitioners' failure to exhaust administrative remedies, overrule Petitioners' Preliminary Objections, and dismiss the Petition for Review.

## Background

CPS services are services for individuals with intellectual disabilities or autism that are funded under the Consolidated Waiver, the Person/Family Directed Supports Waiver, and the Community Living Waiver (together, Waivers). The Waivers are home- and community-based waivers approved by the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services, pursuant to Section 1915(c) of the Social Security Act, 42 U.S.C. § 1396n(c). Through the Waivers, individuals who are eligible to receive services in an intermediate care facility may instead receive services in their homes and communities. The Waivers are designed to help individuals with intellectual disabilities and autism live more

2

independently. DHS is responsible for administering the Waivers and setting rates for Waiver services, including CPS services.

On November 13, 2019, Petitioners filed the instant Petition for Review, alleging that on May 25, 2019, DHS published a Final Notice of Fee Schedule Rates for CPS Services (Final Notice) in the Pennsylvania Bulletin. Petitioners allege that the Final Notice instituted new reimbursement rates for Petitioners' services that do not cover the actual costs of the services they provide. Specifically, Petitioners aver:

> By publishing [the] Final Notice in the Pennsylvania Bulletin, DHS[] [has] instituted a new reimbursement system by which [CPS] services are to be provided to people with intellectual disabilities. The rates under this new system do not reflect the costs to provide [CPS] services. First quarter fiscal year [20]19-[20]20 actual costs incurred by efficient and economically run providers are between 106.87% and 153.98% of the rates set in the Final Notice. The difference between rates and actual costs is unsustainable.
>
> . . . .
>
> [I]f declaratory and injunctive relief is not forthcoming, program beneficiaries will suffer irreparable harm because damage to the provider base will curtail essential services, especially in rural areas, and especially with respect to beneficiaries requiring the highest level of support. . . .

Pet. for Rev. ¶¶ 10, 12. On July 1, 2019, DHS implemented the new rate structure announced in the Final Notice. *Id.* ¶ 85.

According to Petitioners, DHS uses a reimbursement system called a "unit of service," and one unit equals 15 minutes of a certain type of service. *Id.* ¶ 17. Each type of service has a corresponding code, called a "W code," that is used for billing and reimbursement. *Id.* ¶ 18. The Final Notice reduced the number of W codes from 54 to 15. *Id.* ¶ 19. Each new W code provides a fixed reimbursement amount per unit of

3

service. *Id.* ¶ 20. Petitioners allege that the new W codes fail to reflect the costs actually incurred by the providers. *Id.* ¶¶ 22-43.

With regard to DHS's publishing of the Final Notice, Petitioners allege:

> 104. The . . . Final Notice is an unpromulgated regulation insomuch as it creates a binding norm and does not comply with the Commonwealth Documents Law, [Act of July 31, 1968, P.L. 769, *as amended*,] 45 P.S. §§ 1102-[1602, and 45 Pa. C.S. §§ 501-907]; the Regulatory Review [A]ct, [Act of June 25, 1982, P.L. 633, *as amended*,] 71 P.S. §§ 745.1[-745.15]; and the Commonwealth Attorneys Act, [Act of October, 15, 1980, P.L. 950, *as amended*,] 71 P.S. §§ 732[-]101[ to 732-506].

> 105. The rate structure methodology manifested in the . . . Final Notice was not submitted to [the United States Department of Health and Human Services, Centers for Medicare and Medicaid Services,] for approval and incorporation into the [Waivers] prior to the July 1, 2019 effective date.

> 106. The rate structure methodology manifested in the . . . Final Notice does not reflect costs that are reasonable, necessary, and related to the delivery of the service and sufficient to ensure access, encourage provider participation, and promote provider choice as required by federal law and the [Waivers].

*Id.* ¶¶ 104-06 (internal case citation omitted); *see id.* ¶¶ 109-11 (asserting the same averments).

Petitioners seek from this Court: (1) a declaration that DHS's Final Notice is an unpromulgated regulation and inconsistent with federally approved payment methodologies; and (2) an injunction prohibiting DHS from implementing the new rate system and requiring DHS to establish rates that are sufficient to meet reasonable provider costs. *Id.* at 31-32.

4

On November 14, 2019, Petitioners filed an Application for Partial Summary Relief (Application) under Pa. R.A.P. 1532(b),[2] to which DHS filed an Answer on December 13, 2019. In their Application, Petitioners seek a partial judgment declaring that the Final Notice is an unpromulgated regulation. By Order dated February 14, 2020, this Court deferred the establishment of a briefing schedule for the Application until final disposition of both parties' Preliminary Objections. On March 4, 2020, this Court also entered an Order staying discovery until further order of this Court.

On December 13, 2019, DHS filed Preliminary Objections to the Petition for Review, asserting that the Petition for Review should be dismissed for failure to exhaust administrative remedies, lack of standing, and failure to state a claim upon which relief can be granted. Thereafter, Petitioners filed Preliminary Objections in the Form of a Motion to Strike DHS's Preliminary Objections under Pa. R.C.P. No. 1028(a)(2) and (3), asserting that DHS's Preliminary Objections lack specificity and fail to conform to the pleading requirements of the Pennsylvania Rules of Civil Procedure.[3] The parties have now fully briefed their respective Preliminary Objections.

On December 7, 2020, Petitioners also filed an Application to Expedite Ruling on Preliminary Objections, asking this Court to expedite its ruling on both parties' Preliminary Objections because the provider Petitioners "have struggled to maintain their programs despite unsustainable rates." Appl. to Expedite ¶ 15. This Court granted the Application to Expedite on December 22, 2020.

---

[2] Pa. R.A.P. 1532(b) provides: "At any time after the filing of a petition for review in an . . . original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear."

[3] Pa. R.C.P. No. 1028(a)(2) and (3) provides that a party may file preliminary objections to any pleading on the grounds of "failure of a pleading to conform to law or rule of court" and "insufficient specificity in a pleading."

## Analysis

In ruling on preliminary objections, this Court must "accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that [it] may draw from the averments." *Highley v. Dep't of Transp.*, 195 A.3d 1078, 1082 (Pa. Cmwlth. 2018). However, we are "not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review." *Id.* This Court should sustain preliminary objections only where "the law makes clear that the petitioner[s] cannot succeed on [their] claim[s]." *Id.* at 1083. "[W]here any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections." *Pa. State Lodge, Fraternal Ord. of Police v. Dep't of Conservation & Nat. Res.*, 909 A.2d 413, 416 (Pa. Cmwlth. 2006), *aff'd*, 924 A.2d 1203 (Pa. 2007).

### 1. Petitioners' Preliminary Objections

We will first address Petitioners' Preliminary Objections because they seek to strike DHS's Preliminary Objections for lack of specificity and failure to conform to rules of court. Petitioners contend that under the Pennsylvania Rules of Civil Procedure, any pleading, including preliminary objections, may be stricken for "failure of a pleading to conform to law or rule of court" and for "insufficient specificity in a pleading." Pa. R.C.P. No. 1028(a)(2) and (3). Specifically, Petitioners assert that DHS's Preliminary Objections violate Pa. R.C.P. Nos. 1019(a) and 1028(b) because they include only general, boilerplate averments and fail to allege the material facts upon which the objections are based. We disagree.

DHS raises eight enumerated objections to the Petition for Review, as follows:

> 1. Petitioners Westmoreland County Blind Association, Associated Production Services, Inc., and United Cerebral Palsy of Central

6

Pennsylvania have improperly invoked the original jurisdiction of this Court pursuant to 42 Pa.[]C.S. § 761 because they have failed to exhaust their administrative remedies.

2. Petitioner Associated Production Services is at the same time seeking to raise claims similar to those asserted in the Petition for Review before the Department of Human Services[,] Bureau of Hearing and Appeals [(BHA)], and has filed a Motion to File Request for Hearing Nunc Pro Tunc under 55 Pa. Code § 41.[31].

3. Petitioners Rehabilitation & Community Providers Association, Scott Howard Schwartz and Ryan Brett do not have standing to maintain this action.

4. Petitioners do not have standing to seek relief on behalf of any other provider of services delivered in the [Waivers].

5. Petitioners have failed to state a claim on which relief can be granted because the [Final Notice] does not violate the Commonwealth Documents Law, . . . the Regulatory Review Act, . . . or the Commonwealth Attorneys Act[] . . . .

6. Petitioners have failed to state a claim on which relief can be granted because the [Final Notice] does not violate [any] federal statute or regulation.

7. Petitioners have failed to state a claim on which relief can be granted because they do not have a privately enforceable right to challenge [DHS's] administration of a program that operates under a waiver granted by the federal government.

8. Petitioners have failed to state a claim on which relief can be granted because they failed to allege the elements necessary for injunctive relief.

DHS's Prelim. Objs. ¶¶ 1-8 (internal headings omitted).

Petitioners contend that in its Preliminary Objections, DHS was required to aver the material facts supporting the grounds for each objection raised. Petitioners rely on Rule 1019(a), which provides that "[t]he material facts on which a cause of action or

7

defense is based shall be stated in a concise and summary form." Pa. R.C.P. No. 1019(a). However, the plain language of Rule 1019(a) applies to pleadings averring "a cause of action or defense," i.e., a complaint or petition for review or an answer and new matter. *Id.* Contrary to Petitioners' assertion, the "material facts" requirement of Rule 1019(a) does not explicitly apply to preliminary objections to a petition for review.

Petitioners also rely on Rule 1028(b), which provides that preliminary objections "shall state specifically the grounds relied upon." Pa. R.C.P. No. 1028(b). Petitioners argue that DHS's Preliminary Objections violate this rule because they include only general, boilerplate averments and fail to include the facts and case law supporting each objection.

While DHS's Preliminary Objections are undoubtedly succinct, we decline to strike them for lack of specificity. We conclude that DHS's Preliminary Objections are sufficiently specific to apprise both Petitioners and this Court of its bases for objecting to the Petition for Review, in compliance with Rule 1028(b). *See* Pa. R.C.P. No. 1028(b); *see also* Pa. R.C.P. No. 1022 (stating that each numbered paragraph in a pleading "shall contain as far as practicable only one material allegation"). This is not a situation where a preliminary objection merely avers that a petition for review "fails to state a claim" without specifying *why* the petition is inadequate. *Cf. Michael Facchiano Contracting, Inc. v. Pa. Tpk. Comm'n*, 621 A.2d 1058, 1061 (Pa. Cmwlth. 1993) ("Pa.[]R.C.P. [No.] 1028(b) provides that preliminary objections must specifically set forth the basis for the objection, and that general averments merely alleging that the complaint 'failed to state a claim' are insufficient."). Rather, each of DHS's objections asserting a demurrer specifies why DHS believes the Petition for Review is legally insufficient to state a claim for relief. *See* DHS's Prelim. Objs. ¶¶ 5-8. There is also no requirement in our Rules of Civil Procedure that preliminary

8

objections must include citations to statutes or case law in the pleading itself. DHS properly filed a Brief in Support of its Preliminary Objections, wherein it addresses each of its bases for objecting to the Petition for Review and cites relevant law in support of those objections.

In any event, this Court has the discretion to overlook a procedural defect in a pleading that does not affect the parties' rights. Pa. R.C.P. No. 126 expressly states:

> The [R]ules [of Civil Procedure] shall be *liberally construed* to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. *The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties.*

Pa. R.C.P. No. 126 (emphasis added). Here, Petitioners do not allege that they are in any way prejudiced or unable to adequately respond to the objections asserted. In fact, Petitioners have thoroughly addressed each objection in their Brief in Opposition to DHS's Preliminary Objections.

Accordingly, we overrule Petitioners' Preliminary Objections and deny their request to strike DHS's Preliminary Objections.

### 2. DHS's Preliminary Objections

Preliminarily, DHS alleges that the provider Petitioners failed to exhaust their administrative remedies before filing this action and, thus, this Court lacks subject matter jurisdiction over the Petition for Review.

A petitioner "may not seek judicial resolution of a dispute until he or she has exhausted available statutory or administrative remedies." *Martel v. Allegheny Cnty.*, 216 A.3d 1165, 1172 (Pa. Cmwlth. 2019), *appeal denied*, 222 A.3d 1128 (Pa. 2020). If a petitioner fails to pursue a statutory remedy, a court "is without power to act until the statutory remedies have been exhausted, even in cases where a constitutional question is presented." *Id.* The failure to exhaust administrative remedies precludes

this Court from hearing claims for declaratory or injunctive relief with respect to an administrative agency's action. *Keystone ReLeaf LLC v. Pa. Dep't of Health*, 186 A.3d 505, 513 (Pa. Cmwlth. 2018) (*en banc*). There are, however, narrow circumstances in which exhaustion is not required for this Court to consider a claim for declaratory or injunctive relief. *Id.* at 514.

In this case, Petitioners seek to invoke the exception for a substantial constitutional question. Pet'rs' Br. in Opp'n to Prelim. Objs. at 16-17. Petitioners assert that they were not required to exhaust administrative remedies in this case because the Petition for Review raises a substantial constitutional question and the available administrative remedy is inadequate. *Id.* at 16, 21.

Our Court recently explained the "substantial constitutional question" exception to the exhaustion requirement as follows:

> A party seeking to avoid exhaustion must demonstrate a "substantial question of constitutionality (and not a mere allegation) *and* the absence of an adequate statutory remedy." The exception applies to facial challenges "made to the constitutionality of the statute or *regulation as a whole, and not merely to the application of the statute or regulation in a particular case*."

*Keystone ReLeaf*, 186 A.3d at 514 (internal citations omitted) (emphasis in original); *see also Martel*, 216 A.3d at 1176 (explaining that "the exercise of equity jurisdiction is appropriate when a 'substantial frontal attack' to [a] statute is brought[,] but it is not appropriate when the challenge pertains to the application of the statute"). To fall within this "extraordinarily narrow" exception, the petitioner "must show that the challenged statute or regulation clearly and unambiguously violates a constitutionally[]secured right." *St. Clair v. Pa. Bd. of Prob. & Parole*, 493 A.2d 146, 153 (Pa. Cmwlth. 1985).

Here, Petitioners do not assert a "frontal constitutional attack" on a statute or regulation, nor do they seek to have a statute or regulation declared unconstitutional. Rather, in their Petition for Review, Petitioners seek only a declaration that the "Final Notice [is] an unpromulgated regulation and inconsistent with the federally approved payment methodology" and an injunction prohibiting DHS from implementing the new rate system "and requiring [DHS] to implement a new or different system." Pet. for Rev. at 31-32. In their Brief in Opposition to DHS's Preliminary Objections, Petitioners contend they have raised a substantial question regarding the constitutionality of the Act of June 30, 2011, P.L. 89, No. 22 (Act 22), which they claim is "the legal authority by which DHS[] purported to issue the . . . Final Notice." Pet'rs' Br. in Opp'n to Prelim. Objs. at 20. We disagree.

The only reference to a constitutional issue in the Petition for Review is an allegation that "the purported delegation [of authority to DHS in Act 22] is a violation of Article II, Section 1 of the Pennsylvania Constitution, which vests the law-making power with the Legislature because it does not contain any legislative standards (except for 'budget neutrality') that constrain DHS and guide courts as to the legislative intent." Pet. for Rev. ¶ 67. However, as Petitioners concede, Act 22 was *not* the stated legal authority for DHS's issuance of the Final Notice. *Id.* ¶ 58 ("According to the Final Notice, the operative legal authority for issuing this notice is 55 Pa. Code Ch[apter] 51."); *see* DHS's Brief in Support of Prelim. Objs. at 25. Petitioners further allege that "if DHS[] had legal authority to issue the Final Notice, that authority must come from Act 22." *Id.* ¶ 58. These averments do not amount to a "frontal constitutional attack" on Act 22 or the Final Notice as a whole; they merely challenge DHS's "purported" application of Act 22 in this case, which does not satisfy the narrow exception to the exhaustion requirement. *See Martel*, 216 A.3d at 1176; *Keystone ReLeaf*, 186 A.3d at 514.

Moreover, the Petition for Review does not seek a declaration from this Court that Act 22 is unconstitutional, further demonstrating that the Petition does not raise a substantial constitutional question.[4] *See Keystone ReLeaf*, 186 A.3d at 518 (dismissing cause of action for failure to exhaust administrative remedies, where the issues "involve[d] . . . the [agency's] interpretation and application of the [statute at issue] and temporary regulations" and, absent a facial constitutional challenge to the statute or regulations, "there [was] no aspect of [the petitioner's] claims that [was] not suitable for disposition by the administrative tribunal"); *see also Borough of Green Tree v. Bd. of Prop. Assessments, Appeals & Rev.*, 328 A.2d 819, 826 n.14 (Pa. 1974) (noting that "statutorily[]prescribed [administrative] remedies may [not] be aborted simply by an allegation in a complaint in equity[] of a constitutional issue").

We also conclude that Petitioners have not shown the absence of an adequate remedy. An administrative remedy is inadequate if it either "does not allow for adjudication of the issue raised" or would allow irreparable harm "during the pursuit of the statutory remedy." *Com. ex rel. Nicholas v. Pa. Lab. Rels. Bd.*, 681 A.2d 157, 161 (Pa. 1996). A party claiming this exception must make a "clear showing that the remedy is inadequate." *Dep't of Pub. Welfare v. Eisenberg*, 454 A.2d 513, 515 (Pa. 1982).

In their Petition for Review, Petitioners plainly acknowledge that there is an administrative remedy available to them, averring that "these providers have the right to appeal the sufficiency of their [reimbursement] rates via the [BHA]." Pet. for Rev.

---

[4] Petitioners rely extensively on *National Solid Wastes Management Association v. Casey*, 580 A.2d 893 (Pa. Cmwlth. 1999), to support their argument that they satisfied the substantial constitutional question exception by challenging the constitutionality of Act 22 and the Final Notice. Pet'rs' Br. in Opp'n to Prelim. Objs. at 19-20. In *National Solid Wastes*, the petitioner filed a declaratory judgment action seeking to have an executive order declared unconstitutional as a violation of the separation of powers doctrine. 580 A.2d at 896. We conclude, however, that Petitioners' reliance on *National Solid Wastes* is inapposite, because they do not seek to have Act 22 or the Final Notice declared unconstitutional.

12

¶ 15. Petitioners argue that, despite this available administrative remedy, they should still be allowed to proceed with this action because the BHA lacks jurisdiction to provide the relief they seek.

However, DHS avers that at least one Petitioner has filed an administrative action with the BHA challenging the legality of the Final Notice and the new reimbursement rates, which Petitioners do not dispute. *See* DHS's Prelim. Objs. ¶ 2; DHS's Br. in Support of Prelim. Objs. at 18-19; Pet'rs' Br. in Opp'n to Prelim. Objs. at 27-29. DHS also alleges that in its appeal before the BHA, the provider raises the same issues as those asserted in this case. DHS's Prelim. Objs. ¶ 2.[5]

We agree with DHS that the BHA has authority to determine whether DHS's new reimbursement methodology is an unpromulgated regulation or otherwise violates state and federal laws. *See Millcreek Manor v. Dep't of Pub. Welfare*, 796 A.2d 1020, 1025 (Pa. Cmwlth. 2002) (recognizing that administrative agencies may rule on the validity of their own guidelines and statements of policy, including whether a guideline or policy is an unpromulgated regulation). Moreover, under DHS's regulations, a medical assistance provider may request declaratory relief in an appeal before the BHA. *See* 55 Pa. Code § 41.42(a), (b); 55 Pa. Code § 41.31(4); 1 Pa. Code § 35.19.[6]

---

[5] DHS has appended to its brief two documents in support of its averments that two of the provider Petitioners have filed appeals with the BHA challenging the legality of the Final Notice. Petitioners object to our consideration of these documents, arguing that DHS should have attached them to its Preliminary Objections rather than to its brief because a brief is not a pleading. We agree with Petitioners. We note, however, that Petitioners do not dispute that certain provider Petitioners have filed appeals with the BHA challenging the new reimbursement rates and seeking monetary damages.

[6] The regulation at 55 Pa. Code § 41.42 states:

> (a) *A provider may include a request for declaratory relief in a petition for relief* only if the relief sought by the provider would not modify or alter an agency action involving the provider.

**(Footnote continued on next page…)**

In short, Petitioners cannot sidestep the exhaustion requirement simply by including a claim for declaratory or injunctive relief in their Petition for Review. *See Dep't of Gen. Servs. v. Frank Briscoe Co.*, 466 A.2d 1336, 1341 (Pa. 1983) ("[T]he declaratory judgment procedure may not be used to prejudge issues that are committed for initial resolution to an administrative forum, any more than it may be used as a substitute to establish in advance the merits of an appeal from that forum."); *Faldowski v. Eighty Four Mining Co.*, 725 A.2d 843, 846 (Pa. Cmwlth. 1998) (sustaining preliminary objection and dismissing a declaratory judgment action for failure to exhaust administrative remedies, because "[t]o hold otherwise would mean that . . . in most administrative cases, a declaratory judgment could be used to short-circuit the administrative process and have the law determined without the benefit of the administrative agency first reviewing the matter").

---

(b) If the requested relief would modify an agency action involving the provider, *the provider may only seek the relief in the context of a request for hearing* filed in accordance with [55 Pa. Code] § 41.31 (relating to request for hearing).

55 Pa. Code § 41.42(a), (b) (emphasis added). The regulation at 55 Pa. Code § 41.31(4) states in relevant part:

(i) If the provider is challenging the validity of a regulation or statement of policy in its provider appeal, the provider shall state the challenge expressly and with particularity and identify the regulation or statement of policy involved.

. . . .

(iii) A provider may not request a declaratory order or an order that [DHS] should be required to promulgate, amend or repeal a regulation as relief in a request for hearing. *The requests shall be set forth in a petition for relief in accordance with 1 Pa. Code §§ 35.18 and 35.19* (relating to petitions for issuance, amendment, waiver or deletion of regulations; and *petitions for declaratory orders*).

55 Pa. Code § 41.31(4)(i), (iii) (emphasis added).

14

Furthermore, this Court has applied the exhaustion requirement in other cases where medical assistance program providers have challenged the legality of DHS's rate reimbursement methods. *See, e.g., Keystone Indep. Living, Inc. v. Dep't of Pub. Welfare* (Pa. Cmwlth., No. 1492 C.D. 2014, filed June 4, 2015), slip op. at 8 (stating that this Court initially dismissed the petitioners' action challenging the legality of DHS's change to its rate reimbursement methodology for waiver services for failure to exhaust administrative remedies);[7] *Pa. Pharmacists Ass'n v. Dep't of Pub. Welfare*, 733 A.2d 666, 673 (Pa. Cmwlth. 1999) (dismissing pharmacies' action for failure to exhaust administrative remedies where they "sought a declaration that the outpatient pharmacy rates under a managed-care program were implemented in violation of the law" and "an order enjoining [DHS] from permitting continued reimbursements to providers" under the program and "directing [DHS] to require reimbursement at a prior rate").

Finally, we reject Petitioners' contention that requiring them to exhaust their administrative remedies will result in irreparable harm. According to Petitioners, it will take "at least 24 months" for the BHA to decide their administrative appeals, and

---

[7] In *Keystone Independent Living*, this Court explained:

[*W*]*hile the instant BHA appeals were pending, the [p]etitioners filed an action against [DHS] in this Court seeking a declaratory judgment and injunctive relief on the ground that [its] Revenue Reconciliation was an invalid regulation* because it was not issued in compliance with the requirements of . . . the Commonwealth Documents Law . . . . *Th[is] Court dismissed that action*, noting that the allegations that [the] Revenue Reconciliation was invalid for failure to comply with the [Commonwealth] Documents Law "appear to have merit," but *concluding th[is] Court lacked jurisdiction because [the p]etitioners had failed to exhaust their administrative remedies in their appeals before the BHA*.

Slip op. at 7-8 (footnote omitted) (emphasis added). We may cite an unreported decision of this Court as persuasive authority. *See* Cmwlth. Ct. Internal Operating Procedure Section 414, 210 Pa. Code § 69.414 (stating that an unreported panel decision of this Court, issued after January 15, 2008, may be cited for its persuasive value).

15

"[t]aking into consideration time for the release of [year-end] audits (late 2020/early 2021) and the speed of the [BHA's] docket and adjudication timeline, decisions on appeals of the . . . Final Notice will likely not be rendered until, at [the] earliest, May 2021." Pet'rs' Br. in Opp'n to Prelim. Objs. at 24; Pet. for Rev. ¶¶ 12, 15. Petitioners claim that they cannot wait for the BHA to adjudicate these matters because they "will be required to materially scale back or shut down their [CPS] programs if they do not obtain lawful rates this 2019-2020 fiscal year." Pet'rs' Br. in Opp'n to Prelim. Objs. at 25; Pet. for Rev. ¶ 15. However, Petitioners cannot avoid the exhaustion requirement simply because they believe their administrative appeals will not be resolved in a timely manner. *See Mercy Hosp. v. Pa. Hum. Rel. Comm'n*, 451 A.2d 1357, 1359 (Pa. 1982) (recognizing that a more expeditious judicial resolution of a dispute "does not warrant [judicial] intrusion where there is a statutory process designed for its resolution").

Furthermore, as discussed above, Petitioners can file an appeal with the BHA challenging the legality of the rate changes announced in the Final Notice. Petitioners also acknowledge that they "have the right to appeal the sufficiency of their [reimbursement] rates via the [BHA]" to attempt to recover the allegedly deficient funds. Pet. for Rev. ¶ 15; *see* Pet'rs' Br. in Opp'n to Prelim. Objs. at 29 (stating that the relief requested in the BHA appeals is monetary damages). Therefore, we conclude that Petitioners have not clearly shown that the available administrative remedy is inadequate. *See Eisenberg*, 454 A.2d at 515.

## Conclusion

Accordingly, because we conclude that Petitioners were required to exhaust their administrative remedies before filing this action, we sustain DHS's Preliminary Objection on this basis and dismiss the Petition for Review. *See Jackson v. Centennial Sch. Dist.*, 501 A.2d 218, 221 n.5 (Pa. 1985) ("[E]xhaustion of administrative remedies is a prerequisite to the court's exercise of subject[]matter jurisdiction."); *Hughes v. Pa.*

16

*State Police*, 619 A.2d 390, 393 (Pa. Cmwlth. 1992) ("[W]henever a court discovers that it lacks jurisdiction over the subject matter or a cause of action, *it is compelled to dismiss the matter under all circumstances. . . .*") (emphasis in original); *Beluschok v. Peoples Nat. Gas Co.*, 470 A.2d 196, 198 (Pa. Cmwlth. 1984) ("[I]f a preliminary objection raising a question of jurisdiction is sustained, the court is then without power or authority to act further in the proceedings.").[8]  We also overrule Petitioners' Preliminary Objections and deny as moot Petitioners' Application for Partial Summary Relief.

_____
ELLEN CEISLER, Judge

---

[8] Because we sustain DHS's Preliminary Objection with regard to the exhaustion of administrative remedies, we need not address its remaining Preliminary Objections.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rehabilitation and Community : 
Providers Association, and : 
Westmoreland County Blind : 
Association, and Associated : 
Production Services, Inc., and United : 
Cerebral Palsy of Central Pennsylvania, : 
Inc. and Scott Howard Schwartz by and : 
through Theodore A. Schwartz, Co : 
Guardian, and Ryan Brett by and : 
through His Guardian Francis Brett, : 
                 Petitioners : 
                  : 
       v. :   No. 543 M.D. 2019
                  : 
Department of Human Services : 
Office of Developmental Programs, : 
                 Respondents : 

## **O R D E R**

AND NOW, this 3rd day of February, 2021, we hereby: (1) SUSTAIN the Preliminary Objection filed by the Department of Human Services Office of Developmental Programs (DHS) based on the failure to exhaust administrative remedies; (2) OVERRULE the Preliminary Objections in the Form of a Motion to Strike DHS's Preliminary Objections filed by Rehabilitation and Community Providers Association, Westmoreland County Blind Association, Associated Production Services, Inc., United Cerebral Palsy of Central Pennsylvania, Inc., Scott Howard Schwartz by and through his co-guardian, Theodore A. Schwartz, and Ryan Brett by and through his guardian, Francis Brett (together, Petitioners); (3) dismiss Petitioners' First Amended Petition for Review; and (4) DENY AS MOOT Petitioners' Application for Partial Summary Relief.

                                         _____
                                         ELLEN CEISLER, Judge